OPINION
BARRY, Circuit Judge.
Bohdan Senyszyn pled guilty pursuant to a plea agreement to a four-count information, charging that, while serving as an agent of the Internal Revenue Service (“IRS”), he: filed false tax returns, in violation of 26 U.S.C. § 7214(a)(7) (Count 1); evaded taxes, in violation of 26 U.S.C. § 7201 (Count 2); structured financial transactions so as to avoid mandatory reporting to the Department of the Treasury, in violation of 31 U.S.C. § 5324(a)(3) (Count 3); and committed bank fraud, in violation of 18 U.S.C. § 1344 (Count 4). Senyszyn thereafter sought to withdraw his guilty plea to the tax evasion count, arguing that he was actually innocent of the charged conduct and that he misunderstood the terms of the plea agreement. The District Court denied his motion, and Senyszyn appeals. We will affirm.[1]
I. Facts & Background
A. Offense Conduct
Senyszyn was a Certified Public Accountant employed by the IRS. In June 2002, he took on a side job managing the financial affairs of Modern Method, a real estate development company owned by his friend David Hook. Senyszyn assured Hook that he would create tax shelters to reduce Modern Method’s income tax liabilities.[2]
*203 Senyszyn also misstated his own income on his 2008 tax return. When Modern Method — whose finances, at that point, were controlled by him — sold Lot 72 in Andover, New Jersey, for approximately $351,000, Senyszyn directed $202,625.75 of that money to the MMT trust. Although the beneficiaries of the trust were supposedly Hook and Senyszyn’s children, Sen-yszyn, as sole trustee, had exclusive control of the money and used it to pay for various personal expenses. He also directed Modern Method’s closing attorney to transfer roughly $65,000 of the purchase price to Chase Bank on his behalf to pay off a personal loan. He did not report any income from the sale of Lot 72 on his 2003 tax return.[3]
B. Procedural History
On April 13, 2006, a Grand Jury returned a seven-count indictment charging Senyszyn with: four counts of filing false tax returns as an IRS agent, two counts of tax evasion, and one count of illegally structuring financial transactions. A superseding indictment returned nearly a year later added an eighth count, which alleged that Senyszyn conspired with his wife Kelly to commit bank fraud. Five weeks before trial, Senyszyn agreed to plead guilty to a four-count information, and the government agreed to dismiss the eight-count superseding indictment against Senyszyn and his wife.
With respect to Count 2 — the tax evasion charge at issue in the present appeal — the plea agreement stated that “[d]uring the calendar year 2003, [] Sen-yszyn acquired taxable income that was in addition to the income paid to him as salary and wages by the IRS. Specifically, [he] acquired approximately $252,726.00.” (Appendix at 87.) Senyszyn’s tax return, however, reported only his IRS salary— $78,115.80. In filing that return, Senyszyn “knowingly and willfully did not include about $252,726.00 in additional taxable income,” upon which “$85,016.27 [in income tax] was due and owing to the United States.” (Id.) Senyszyn was represented by counsel at the Rule 11 colloquy, and stated that he had thoroughly read the contents of the plea agreement and that any questions he had had been answered by counsel. He discussed his employment history with the District Court, noting that he had been an IRS agent since 1986 and, therefore, was very familiar with the Internal Revenue Code. The Court explained the essential elements of Count 2 — specifically, that the Government would “have to prove that [he] owed substantial income tax; ... that [he] attempted to evade and defeat that tax; and ... that [he] acted willfully.” (Id. at 103.) Senyszyn indicated that he understood. He further agreed that, “[f|or the calendar year, 2003 ... [he] knowingly and willfully evade[d] income tax due and owing to the United States.” (Id. at 112.)
Senyszyn subsequently wrote to the District Court seeking to withdraw his guilty plea. The Court interpreted the letter as a motion to withdraw the plea, and heard argument during which Senyszyn asserted that he did not violate 26 U.S.C. § 7201 because he did not owe taxes on his 2003 income. He also asserted that his counsel was “not accepting” of his arguments and “not putting them forward.” (Appendix at 129.) He indicated that, as to Count 2, counsel provided ineffective assistance, and stated his desire to proceed pro se. *204 After lengthy questioning to confirm that he understood the risks of self-representation, the Court ordered him to file a formal motion “saying[ ][’]I seek to withdraw my guilty plea as to Count 2 for the following reasons.[’]” (Id. at 148.)
Senyszyn complied with the District Court’s order, and argued that his guilty plea should be withdrawn for three reasons. First, he asserted that the $202,625 paid to the MMT trust for the sale of Lot 72 was a “loan repayment” to the trust, and that, as such, it was not a taxable event. Second, he contended that the $65,000 payment to Chase Bank also constituted a return of money that he personally loaned to Modern Method, and similarly was not taxable income. Alternatively, he argued that even if the amounts were considered income, they were offset by losses he suffered in 2003. Specifically, he contended that he returned $404,000 that he embezzled from Hook in 2003, and that he was entitled to report that amount as a loss. Because that amount far exceeded the approximately “$252,746 in additional taxable income” that the plea agreement stated that he failed to report, Senyszyn argued that he did not have a tax deficiency for 2003 and that he consequently could not be convicted of tax evasion. See United States v. Farnsworth, 456 F.3d 394, 401 (3d Cir.2006) (“We have explained that essential to conviction under 26 U.S.C. § 7201 is 1) the existence of a tax deficiency, 2) an affirmative act constituting an attempt to evade or defeat payment of the tax, and 3) willfulness”) (emphasis added) (quotation marks and citation omitted).
The District Court was not persuaded by Senyszyn’s arguments for withdrawal of his plea. It noted that “[n]othing in your papers has said why you’re seeking now to withdraw your legal plea other than you’re saying ‘I’m not guilty of that charge[.]’ ” (Appendix at 190.) The Court observed that Senyszyn had not produced a “forensic report from [his] accountant,” (id. at 192), and had failed to submit any factual support for his motion. The Court declined to determine whether Senyszyn’s assertions of innocence had merit, instead stating that “nothing in your motion ... would warrant this Court to reflect” on the initial plea and question if it was made knowingly or voluntarily. (Id. at 195D.)
II. Discussion
Federal Rule of Criminal Procedure 11(d)(2) provides that “[a] defendant may withdraw a plea of guilty ... after the court accepts the plea, but before it imposes sentence if ... the defendant can show a fair and just reason for requesting the withdrawal” (emphasis added).[4] Our inquiry is, therefore, whether the District Court abused its discretion in determining that Senyszyn failed to establish a “fair and just reason” to withdraw his plea. Brown, 250 F.3d at 815; see United States v. Pike, 211 F.3d 385, 388 (7th Cir.2000).[5]
As we stated in United States v. Jones, 336 F.3d 245, 252 (3d Cir.2003) (Jones II), “[a] district court must consider three factors when evaluating a motion to withdraw a guilty plea: (1) whether the defen *205 dant asserts his innocence; (2) the strength of the defendant’s reasons for withdrawing the plea; and (3) whether the [Gjovernment would be prejudiced by the withdrawal.” There is no doubt that the “burden of demonstrating a ‘fair and just’ reason falls on [Senyszyn], and that burden is substantial.” Jones II, 336 F.3d at 252. ‘“A shift in defense tactics [or] a change of mind’ ” is plainly insufficient. Brown, 250 F.3d at 815 (quoting United States v. Jones, 979 F.2d 317, 318 (3d Cir.1992) (Jones I), superceded by statute on other grounds as stated in United States v. Roberson, 194 F.3d 408, 417 (3d Cir.1999))
A. Assertion of Innocence
Senyszyn contends that the District Court abused its discretion by failing to respond to his assertion of innocence. “Initially, let us point out that in both his plea agreement and again during his plea hearing, [Senyszyn] stated that he was guilty of the charge, specifically” admitting the factual grounds for the charge. Pike, 211 F.3d at 389. “This representation is entitled to a presumption of verity, ... and the [District [C]ourt is generally justified in discrediting the proffered reasons for the motion to withdraw and holding the defendant to his admissions at the Rule 11 hearing.” Id. at 389-90 (quotation marks and citations omitted). Furthermore, the Court did address Senyszyn’s innocence argument on several occasions, noting that it was nothing more than an unsupported claim that he was innocent of the charge. As we have repeatedly stated, and as the Court appropriately recognized, “[b]ald assertions of innocence ... are insufficient to permit a defendant to withdraw [his] guilty plea.” Brown, 250 F.3d at 818; see Jones II, 336 F.3d at 252.
Instead, “[assertions of innocence must be buttressed by facts in the record that support a claimed defense.” Jones II, 336 F.3d at 252 (quotation marks and citations omitted). Senyszyn could have produced a report from his accountant stating that he did not owe taxes for 2003; or documentation of the substantial loans he allegedly made;[6] or evidence that he used the money in the MMT trust to benefit the beneficiaries rather than himself; or even an amended tax return for 2003 reporting the return of embezzled money as a loss. He did not — and thus failed to meet his substantial burden to “meaningfully reassert his innocence.” Jones II, 336 F.3d at 253.[7]
B. Strength of Reasons for Withdrawal
Even were we to credit Senyszyn’s assertions of innocence, that would not be enough to justify the withdrawal of his plea. “Once a defendant has pleaded guilty, he ‘must then not only reassert *206 innocence, but give sufficient reasons to explain why [a] contradictory position[] [was] taken before the [District [C]ourt Jones II, 336 F.3d at 253 (quoting Jones I, 979 F.2d at 318), at the plea colloquy. That Senyszyn has surely not done. As the District Court noted, “[t]here’s nothing in [Senyszyn’s] recent submissions” to explain why he pled guilty in September, but changed course in December. (Appendix at 196.) He admitted that he tried to convince the government of his innocence on Count 2, that his efforts failed, and that he pled guilty anyway. In the time between Senyszyn’s plea and his motion to withdraw, nothing changed except that he changed his mind and decided to revisit his no tax deficiency defense.
Senyszyn argues to the contrary, and contends that his plea was unknowing. He points to a passage in the plea agreement which states:
Moreover, this agreement to stipulate on the part of [the Government] is based on the information and evidence that [the Government] possesses as of the date of this agreement. Thus, if [the Government] obtains or receives additional evidence or information prior to sentencing that it determines to be credible and to be materially in conflict with any stipulation in the attached [agreement], [the Government] shall not be bound by any such stipulation.
(Id. at 82-83.) Senyszyn claims that he interpreted that passage to mean that if he discovered new evidence after pleading guilty, he could simply point to that evidence and withdraw his plea. The District Court was understandably nonplused by that claim. To suggest, as he — a highly-educated individual — does that he thought the plea agreement allowed for a post-plea reassessment of guilt is simply not credible, and the Court so found.[8]
III. Conclusion
For the foregoing reasons, we will affirm the judgment of sentence.

. Senyszyn does not appeal the sentence itself in which, from a Guidelines range of 41 to 51 months, the District Court varied downward to 34 months imprisonment.

. Senyszyn went on to create a number of business entities, including: two general partnerships named MMLDP and MMPP; a corporation named MMDI; and a trust named MMT. For the tax year 2002, Senyszyn filed false tax returns for all four entities. In September 2002, Senyszyn formed yet another corporation, named MML, and transferred sums of money to it with an eye towards avoiding the mandatory reporting requirements. Senyszyn later misrepresented MML’s assets to obtain a $25,000 loan from Fleet National Bank.

. In 2004, Hook became suspicious of Senyszyn and notified the authorities. The Department of the Treasury's Office of Inspector General and the IRS's Criminal Investigation Division began an investigation into Senysz-yn's conduct, during which Hook secretly recorded hours of incriminating conversations with him.

. The 2002 revision of Rule 11 transferred pre-sentencing plea withdrawals from former Rule 32(e) to new Rule 11(d). See 24 James Wm. Moore et al., Moore's Federal Practice § 611.31 (3d ed.2008) (discussing the rule change). Cases prior to that date are nonetheless relevant here. See, e.g., United States v. Brown, 250 F.3d 811, 815 (3d Cir.2001) (evaluating whether defendant had "a fair and just reason for withdrawing a plea of guilty” under former Rule 32(e)).

. We have jurisdiction pursuant to 28 U.S.C. § 1291.

. Senyszyn produced only a letter from Hook, which indicated that $65,000 from his “investment ” in Modern Method was "returned to [him] from the Lot 72 sale.” (Appendix at 171) (emphasis added). As Senyszyn is no doubt aware from his seventeen years of experience as an IRS agent, the return on an investment is taxable income. Cf. Geftman v. Comm’r of Internal Revenue, 154 F.3d 61, 68 (3d Cir.1998) ("For disbursements to constitute true loans there must have been ... an unconditional obligation on the part of the transferee to repay the money, and an unconditional intention on the part of the transferor to secure repayment”) (quotation marks and citation omitted).

. The District Court could have explained its reasons for denying Senyszyn’s motion in more detail, and doing so would have aided our review. Cf. United States v. Levinson, 543 F.3d 190, 196 (3d Cir.2008) (discussing, in the context of sentencing, the need to "provide sufficient justifications on the record” to support a decision, and noting the relationship between explication of the reasons and the substantive reasonableness of the decision).

. When, as here, a defendant has failed to demonstrate that “the other factors support a withdrawal of the plea," the “Government need not show” that it would be prejudiced by withdrawal. Jones II, 336 F.3d at 255. Nonetheless, as the District Court found, "at this late juncture” — i.e. just prior to sentencing — withdrawal would prejudice the government. (Appendix at 195C.)